STATE of Minnesota, Respondent,

v.

Mark Wayne FAIRCHILD, Appellant.

No. C0–89–60.

Court of Appeals of Minnesota.

Aug. 22, 1989.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael Lynch, Kandiyohi County Atty., Richard W. Jackson, Jr., Asst. County Atty., Willmar, for respondent.

Gregory R. Anderson, Hulstrand, Anderson & Larson, Willmar, for appellant.

Heard, considered and decided by PARKER, P.J., KALITOWSKI and IRVINE *, JJ.

## OPINION

PARKER, Judge.

The trial court convicted appellant Mark Fairchild of speeding in violation of Minn. Stat. § 169.14 (1988) and of driving a motor vehicle without liability insurance in violation of Minn.Stat. §§ 65B.48 and 65B.67, subd. 2 (1988). Fairchild challenges his conviction for driving without insurance. We reverse.

## FACTS

Minnesota State Trooper Michael Cruz stopped Mark Fairchild as he drove his motorcycle north on Highway 71 near Willmar, Minnesota. Cruz was in the southbound lane and, according to his radar unit,

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Fairchild was traveling at 78 miles per hour. After stopping, Fairchild identified himself and showed Cruz the title certificate to the motorcycle. The certificate indicated that he had purchased the cycle but had not yet transferred the title into his own name. Cruz asked Fairchild to produce proof that the vehicle was covered by insurance. Because he did not have the proof in his possession, Cruz provided him with a "Vehicle Insurance Information Form" to be completed and filed within ten days at the highway patrol office in St. Cloud. This form would identify Fairchild's insurer and indicate whether insurance was in effect for this vehicle on this particular day.

Trooper Cruz claims that he never received any insurance information from Fairchild after the stop. Consequently, Cruz issued him a citation for violating Minn.Stat. §§ 65B.48 and 65B.67, subd. 2 (1988).

At the court trial on the charges of speeding and operating a motor vehicle without insurance, the state presented its evidence through the testimony of Trooper Cruz. He testified that he stopped Fairchild, that Fairchild was at that time unable to provide proof of insurance, and that he failed to provide proof within the statutory time period after the stop.

After the state rested, Fairchild moved to dismiss for failure of the state to meet its burden of proof. He contended the state did not prove there was no insurance on the vehicle and that he was knowingly driving without insurance. After the trial court denied his motion to dismiss, Fairchild testified that he purchased insurance from MSI Associates through an agent named Randy Muellner, that he paid monthly premiums, and that he paid with money orders and no longer had the receipts. Fairchild also testified that he filled out the form Cruz gave him, attached his only copy of the insurance policy and dropped both off at the state patrol office in St. Cloud. The state patrol office denies receiving this information. No one has been able to locate Muellner, and Fairchild has been unable to produce a copy of his policy or verification of his coverage from MSI Associates.

Fairchild apparently knew before trial that the state had not received his proof of insurance and that his attorney contacted MSI and found there was no agent named Randy Muellner. Fairchild's only other witness was his girlfriend. She testified that he paid for the policy with money orders and that he turned in the policy with the form to the state patrol office in St. Cloud.

Fairchild ultimately was convicted of speeding and driving a motor vehicle without liability insurance. For the failure to have insurance, Fairchild was fined $225 and sentenced to a stayed, 90–day jail term.

## ISSUE

Did the trial court err in convicting Fairchild of driving a motor vehicle without liability insurance in violation of Minn.Stat. §§ 65B.48 and 65B.67 (1988)?

## DISCUSSION

In criminal cases, this court will apply the same standard of review to cases heard by a trial court without a jury as to cases heard by a jury. *State v. Cox*, 278 N.W.2d 62, 65 (Minn.1979). Thus, this court is limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, the trial court could reasonably conclude that the defendant was guilty of the offense charged. *See State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). We also note that as a general rule, an appellate court need not give deference to a trial court's decision on a legal issue. *Frost–Benco Electric Association v. Minnesota Public Utilities Commission*, 358 N.W.2d 639, 642 (Minn.1984).

Minn.Stat. § 65B.48 requires every owner of a motor vehicle in Minnesota to possess liability insurance. To enforce this requirement, Minnesota appears unique in providing separate civil and criminal mechanisms. The civil provision contained in Minn.Stat. § 65B.481 requires the driver to have proof of insurance in his possession. Failure to have proof in possession permits

the commissioner of public safety to suspend the license of the operator. That statute also provides:

> No person shall be in violation of this section if the person provides the required proof of insurance to the officer within seven days or to the court on or before the date set for appearance.

Minn.Stat. § 65B.481 (1988).

The criminal provision under which Fairchild was convicted and sentenced is contained in Minn.Stat. § 65B.67. It provides in relevant part:

> Any owner of a motor vehicle or motorcycle with respect to which security is required under sections 65B.41 to 65B.71 who operates the motor vehicle or motorcycle or permits it to be operated upon a public highway, street or road in this state and *who knows or has reason to know that the motor vehicle or motorcycle does not have security complying with the terms of section 65B.48, is guilty of a misdemeanor * * *.*

Minn.Stat. § 65B.67, subd. 2 (1988) (emphasis supplied).

Fairchild argues that the state failed to satisfy the elements of the criminal statute with proof beyond a reasonable doubt. The state, he contends, established that he did not have proof of insurance, but it did not prove that there was in fact no insurance coverage on the vehicle or that Fairchild was knowingly driving without insurance. According to Fairchild, this constitutes grounds for reversal of the conviction.[1]

While the facts of this case support an inference that Fairchild did not have insurance, we nevertheless believe this conviction must be reversed. Because of the manner in which the criminal portion of this statute was drafted, the state has a very difficult burden of demonstrating beyond a reasonable doubt that the defendant was in fact operating a motor vehicle without the necessary insurance and that the driver knew or had reason to know he was driving the vehicle without insurance. Rather than attempting affirmatively to prove this, the state relied on the civil provisions of Minn.Stat. 65B.481 and proved merely that Fairchild had no proof of insurance in his possession at the stop or at the trial. Such proof is not sufficient to sustain a criminal conviction.

The state claims that Minn.Stat. § 65B.481 provides a statutory mechanism of proof allocation, requiring that the defendant assist in providing proof of insurance. The state apparently believes that failure to have proof of insurance in one's possession constitutes a prima facie case of noncompliance with Minn.Stat. § 65B.48, and that criminal sanctions under Minn. Stat. § 65B.67 can follow if the defendant fails to rebut the prima facie showing. The trial court agreed with this reasoning, citing the great difficulty the state would have in establishing directly that no insurance existed, in fact, after a defendant failed to provide proof of insurance.

We do not agree with the trial court or the position of the state. The state is requesting that a criminal sanction be imposed. A prosecutor must prove beyond a reasonable doubt every element which constitutes the criminal charge filed against a defendant. *See In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). No language in the statutes here at issue, or in the case law, justifies using a civil method of establishing a prima facie case to support a criminal conviction.

As an example of a statutory scheme which provides a more workable mechanism of proof for a similar offense, we note Minn.Stat. § 171.02, subd. 1 (1988), which requires a person to have a driver's license in order to drive a motor vehicle on the

---

1. In his brief Fairchild argues that Minn.Stat. § 65B.67, subd. 2, is a *defective statute.* While the statute contains the criminal intent element (*mens rea*), it does not contain the requisite criminal act element (*actus reus*)—proof that the vehicle was not in fact insured while being operated. This element appears to be presumed in the statute. At trial the state sought to prove this element using the statute requiring that a driver have proof of insurance in his possession. While we agree with Fairchild that the statute appears to be defective, we have decided this matter by considering his motion to dismiss for the state's failure to sustain its burden of proof under a sufficiency of the evidence analysis.

streets and highways of this state. Minn. Stat. § 171.08 further requires the driver to have the license in his possession. Unlike Minn.Stat. § 65B.481, which requires proof of insurance in one's possession, the license provision refers to the criminal sanction:

[N]o person charged with violating the possession requirement shall be convicted if the person produces in court or the office of the arresting officer a driver's license previously issued to that person * * * or satisfactory proof that at the time of the arrest the person was validly licensed * * *.

Minn.Stat. § 171.08 (1988).

The mandatory insurance provisions are not drafted so that the prima facie showing can be made for a criminal conviction by the defendant's lack of proof of insurance, as is the licensing provision. The prima facie showing of failure to possess proof of insurance applies only to the civil sanction for license suspension.

We view the trial court's denial of defendant's motion to dismiss at the close of the prosecutor's case to have been error. The state did not prove that Fairchild's motorcycle did not have insurance coverage *or* that Fairchild knew or had reason to know the motorcycle did not have insurance. Rather, the state proved only that Fairchild did not possess proof of insurance at the time of the stop and did not provide such proof to the state by the time of trial. While the construction of the criminal statute has made the state's burden of proof extremely difficult in this case, we note that the civil provision for suspension of the driver's license is still available as a sanction to enforce the insurance requirement.

## DECISION

Fairchild's conviction for operating a motor vehicle without insurance is reversed.

Reversed.